George Barreda
349 E Richland Ave
Orange, CA 92865

**FILED**

AUG - 7 2024

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SANTA ANA DIVISION

In re:

George Barreda,

    Debtor.

/

**Case 8:24-bk-11449-TA**
Chapter 13

DEBTOR'S OPPOSITION TO THE
OBJECTIONS TO CONFIRMATION OF
DEBTOR'S CHAPTER 13 PLAN
OF REORGANIZATION

411 West Fourth St., Santa Ana, CA 92701

**DEBTOR'S OPPOSITION TO THE OBJECTIONS TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN OF REORGANIZATION BY AMRANE COHEN, CHAPTER 13 TRUSTEE AND ALLEGED CREDITOR, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-24**

## INTRODUCTION

TO THE HONORABLE JUDGE AND ALL PARTIES OF INTEREST:

COMES NOW the Debtor George Barreda who relies upon *Haines v. Kerner*, 1972, 404 U.S. 519 in the above-captioned matter, to give notice that Debtor, pursuant to *Haines v. Kerner*, hereby serves this opposition **TO THE OBJECTIONS TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN OF REORGANIZATION** filed AMRANE COHEN, Chapter 13 Trustee and  JOSEPH C. DELMOTTE (SBN 259460) in behalf THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE

CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-24 ("**TBONYM**") and state on the record and for the record the following:

## OPENING STATEMENT

1.      Upon review of said "OBJECTIONS TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN OF REORGANIZATION" (hereinafter "**OBJECTIONS**"), documents that were filed on July 24, 2024, by Mr. DELMOTTE and on July 29, 2024 by Mr. COHEN as Chapter 13 Trustee did "electronically filed the foregoing with the Clerk of Court" in said case number, wherein the contents of the same objections  they seem to indicate that they represent the interest of "secured creditor", **TBONYM**.  How is that possible when there is evidence available to the general public that **TBONYM** has no legitimate verifiable claim of right at all when it comes to the subject property of George Barreda as a matter of law, if one knows where to look?

2.      Please be advised that I, George Barreda raise two issues of law in this opposition that bear upon the feasibility of said **OBJECTIONS**.

## FIRST OPPOSITION

3.      Please be further advised that I, George Barreda in good faith hired the service of one William J. Paatalo. to conduct a Mortgage Compliance Investigations Chain of Title Analysis & Mortgage Fraud Investigation request regarding the Loan Instruments and the associated real property located at 349 E Richland Ave, Orange, CA 92865 as referenced in the Orange County Record.  I have been informed, believe and therefore allege that Mr. Paatalo, is a licensed private investigator, is a court recognized fact witness expert regarding issues of securitization of loan documents and mortgage fraud investigations.

3.      I provided Mr. Paatalo copies of all my original loan documents, and he went to work.  Mr. Paatalo provided me with his Declaration of facts pertaining to said loan documents with documented proof.  It came as quite a shock to me what is contained in his research.  **TBONYM** is NOT and cannot possibly be the creditor/lender/secured party, secured creditor, etc. having foreclosing rights to my home.  The Declaration reveals that there is no document evidencing any relationship with **TBONYM** or any assignor etc. with me.  So, how is **TBONYM** empowered to foreclose on my home or appear in the instant bankruptcy?  See copy of said Declaration attached as **Exhibit A**

4.      In good faith by this opposition I wanted to give both Chapter 13 Trustee, Mr. COHEN and opposing counsel Mr. DELMOTTE and opportunity to review Mr. Paatalo's work product and see whether they might want to consider withdrawing their objections. Clearly by the tenor of Mr. Paatalo's Declaration that it does appear that **TBONYM**'s evidence or statement/s of standing to foreclose contains false, fraudulent and fictitious allegations in their Form B410 Proof of Claim and therefore both Mr. COHEN and Mr. DELMOTTE appear to have made a misrepresentation to the court in violation of their sworn duties as officer/s of the court respecting due diligence in preparation of the pleading filed over their signatures, et seq, and are hereby so noticed.

5.      In light of the foregoing there does appear to be a fraud on the court by DELMOTTE and COHEN characterizations of **TBONYM** being a "secured creditor" as is stated in their **OBJECTIONS** they electronically filed of record and further sent through the United States Mail service, supporting their statements which fail to establish as fact the actual existence of a "secured creditor."

6.      Again, in light of the work done by Mr. Paatalo, I contend that either DELMOTTE and COHEN or **TBONYM** is openly lying before the court (perjury) and cannot meet the

1    standard of "harmless error" as it were, and my opposition intent was to bring this matter to

2    the attention of DELMOTTE and COHEN prior to the necessity of having to make a formal

3    notice to the court and other authorities. It was my hope by our mutual agreement that a

     contest rising from this misrepresentation will become unnecessary.  Again, this opposition

4    drafted in good faith for the benefit of both DELMOTTE and COHEN.

5    7.    Clearly there is a problem of concern here is that DELMOTTE and COHEN's

6    pleadings filed over their signatures as attorney of record and Trustee of Record make

7    allegations which are unsubstantiated and apparently false, fraudulent and fictitious and

8    thus constitute a material misrepresentation before the court that DELMOTTE and COHEN

9    knew or should have known were false as their sworn duty under the mandate of CCP

10   §128.7, FRCP Rule 11(c), Rule 56(h). Clearly then Penal Code § 115.5, § 115(a), and

     §134 are apparent felony violations committed by **TBONYM** assignor/seller unless

11   DELMOTTE and COHEN can provide the dispositive evidence of the specific documents

12   proving FRCP Rule 17 (a) standing to rebut the Declaration of Mr. Paatalo that proves

13   otherwise. Simply stated, absent actual proof of claim, your **OBJECTIONS** are not right

14   and Debtor will seek a complete correction of this wrong.  Let us firmly remember that

15   Fraud Vitiates all claims; Fraud and Justice Never Dwell Together!  Further the law leaves

     wrongdoers where it finds them!

16                                 **SECOND OPPOSITION**

17   8.    Pursuant to the apparent tactics employed in the ganging up on Debtor by

18   DELMOTTE and COHEN, the counsel/s for unsubstantiated "secured creditor/s" and the

19   duly appointed Chapter 13 Trustee and in light of the anticipated threats of dismissal to be

20   ordered by the court, Debtor in good faith and consistent with current federal public policy

21   given the congressionally mandated guaranteed protections vouchsafed in the supreme

Law of the land at Amendments 5 and 14's guarantee of equal protection under the laws of consideration, currency and tender, in the likelihood of a bona fide creditor/s, Debtor respectfully submits with this opposition and files in the record of the above numbered matter in response to said demands  the attached Bond in "like kind" and with a **MEMORANDUM OF AUTHORITY for COMMERCIAL PROCESS**  and other supporting documents to address the demands certified by Chapter 13 Trustee 410 Proofs of Claims referenced in the attached **California Central Bankruptcy Court Docket Report dated August 7, 2024**  for **Case No. 8:24-bk-11449-TA** to address the concerns of Chapter 13 Trustee, purported secured creditors and the court.

9.      A copy of these documents will be forwarded to the appropriate executive branch for federal tax purposes as required by law.

10.      Mr. COHEN Please fill out the attached Form W9 for federal tax purposes pertaining to this taxable event.  Further please be advised that I have appointed Mr. COHEN, the court appointed trustee, to be the fiduciary on the attached IRS Form 56 to process the attached tender for purposes of settlement and closure of **Account/Case No. 8:24-bk-11449-TA**.

11.      Please be advised Mr. COHEN and Mr. DELMOTTE that upon receipt of this presentment all related outstanding obligations of Debtor are hereby discharged and released pursuant to 96 Stat. 980 and current federal "Public Policy," and you are further required to notify any creditor/s or real party/ies in interest along with any other parties or institutions you may have sent Notices to regarding this obligation that any associated Statement of Account or Claim has been satisfied pursuant to and consistent with current Federal Public Policy of HJR 192 of June 5, 1933 as amended, which discharges and

*DEBTOR'S OPPOSITION TO THE OBJECTIONS TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN OF REORGANIZATION*

settles all public and private debts as fully detailed in said MEMORANDUM OF

AUTHORITY document referenced herein.

## CONCLUSION

12.    Debtor restates that **TBONYM** cannot produce written verifiable proof of status of real party in interest by way of proof of the delivery of an actual thing of value as required under the California Civil Code §1478, Corp. Code § 107, Penal Code § 648, FRCP 17(a). Debtor respectfully requests that **TBONYM's** and Chapter 13 Trustee's **OBJECTIONS** be denied as a matter of law in the interest of fundamental justice.  For peonage and involuntary servitude can never be sanctioned by a common law court of competent jurisdiction as a matter of law.

13.    The fact that **TBONYM** cannot now, cannot never produce any evidence that **TBONYM** is a real party in interest pursuant to the mandate of FRCP Rule 17(a), **TBONYM's** and Chapter 13 Trustee's **OBJECTIONS** are without any basis in law that would support said **OBJECTIONS**.  As such, said **OBJECTIONS** must be denied, dismissed, etc. in the interest of fundamental justice.

14.    In light of the foregoing, clear title to Debtor's homestead be reconveyed to Debtor and the court provides any and further relief the court deems proper in the interest of justice.

Dated: August 7, 2024

Respectfully submitted,

_____
George Barreda

***DEBTOR'S OPPOSITION TO THE OBJECTIONS TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN OF REORGANIZATION***

George Barreda
349 E Richland Ave
Orange, CA 92865

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

In re:                                          **Case 8:24-bk-11449-TA**
                                                Chapter 13
George Barreda,

       Debtor.                          **Declaration of Service**

_____/

I, declare as follows:

I am over the age of eighteen years old and not a party to the within action.

On August _____, A.D. 2024 I served by U.S. Mail a true copy of *DEBTOR'S OPPOSITION TO THE OBJECTIONS TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN OF REORGANIZATION And DECLARATION OF WILLIAM J. PAATALO with ATTACHMENTS, MEMORANDUM OF AUTHORITY for COMMERCIAL PROCESS, and International Promissory Note with Attachments,* in the UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION to:

Amrane Cohen, Chapter 13 Trustee
770 The City Drive South, Suite 3700
Orange, CA 92868

Joseph C. Delmotte (SBN 259460)
ALDRIDGE PITE, LLP
3333 Camino del Rio South Suite 225
San Diego CA 92108

And that I served the same by depositing in an envelope a copy of the above stated documents, sealed the same and paid the required postage for mailing which was sent to the addresses herein which has service for U.S. Mail available.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:    **8/7/24**          By: _____

7

# DECLARATION OF PRIVATE INVESTIGATOR – WILLIAM J. PAATALO

I, William J. Paatalo, hereby declares as follows:

1.      I am an Oregon licensed private investigator under ORS 703.430 and have met the necessary requirements under ORS 703.415. My Oregon PSID number is 49411.

2.   I am over the age of eighteen years, am of sound mind, having never been convicted of a felony or a crime or moral turpitude. I am competent in all respects to make this Declaration. I have personal knowledge of the matters declared herein, and if called to testify, I could and would competently testify thereto.

3.      I have 17 years combined experience in law enforcement and the mortgage industry, as well as ten years as a private investigator.  My Resume ("CV") is attached as **"Exhibit 1."**

4.      I have worked exclusively over the last 14– years, and have spent more than 15,000 hours, conducting investigatory research and interviews related to mortgage securitization and chain of title analyses. Typically, my investigations are at the request of homeowners or their counsel with the objective of determining whether there are facts that corroborate both the actual assertions and implied statements contained in various documents that purport to transfer, deliver, or otherwise imply possession or ownership of a debt, note or mortgage (deed of trust in nonjudicial states).

5.      I have performed such analyses for residential real estate located in many states, including, but not limited to Washington, Oregon, California, Arizona, Nevada, Florida, Ohio, Montana, New Jersey, and several others.

6.   As of this date, I have conducted more than 1,200 investigations in this area.

7.   Because of my education and experience I am familiar with and have sufficient training and expertise to qualify as an expert, and I have testified as an expert and/or expert "fact witness" in state and federal judicial proceedings in various jurisdictions throughout the United States.

1. Declaration of Private Investigator – William J. Paatalo

8.    My specific areas of expertise that have been deemed qualified by the courts are as follows:

•    Knowledge of the "Pooling & Servicing Agreements" and various Securities & Exchange Commission (SEC) filings associated with mortgage-backed securitized trusts.

•    Specific language in the PSA's and Prospectus / Prospectus Supplements involving securitization participants, key dates, "Servicer Advances," sources of third-party payments, and transfer and conveyancing requirements to name a few.

•    Knowledge and use of ABSNet / MBSData and the interpretation of its internal accounting data showing "advance payments" made to the certificate holders / investors, as well as other information specific to accounting, chain of title, and other aspects of securitization.

•    Chain of Title analyzes based upon publicly recorded documents, documents produced in discovery, and documents attached as exhibits to foreclosure complaints. Documents typically included mortgages, deeds of trust, assignment, notes, and allonges; in addition to documents filed under penalty of perjury with the SEC.

9.    I was retained by Plaintiff to review the chain of title to the Deed of Trust executed on or about October 26, 2006, in the amount of $439,500.00 with the named lender:

**(C) "Lender" is**
**AMERICA'S WHOLESALE LENDER**
**Lender is a CORPORATION**
**organized and existing under the laws of NEW YORK**
**Lender's address is**
**4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613**

(**Exhibit 2**). I was asked to identify any anomalies, defects, or issues of fraud related to the subject Deed of Trust (DOT) should they exist. As shown infra, the chain of title to both the DOT and Note / debt is clouded and fatally defective, as the DOT and Note were securitized and pledged to an unknown and undisclosed REMIC series trust(s) and separated (bifurcated) in that process.

## FACTS REVEALED

**I.    Chain of title to the subject DOT and Note is clouded and fatally defective.**

**A.    "AMERICA'S WHOLESALE LENDER" was not a New York Corporation.**

10.    I contacted the New York Department of State seeking a certified copy of a

2. Declaration of Private Investigator – William J. Paatalo

Certificate of Non-Existence for the entity America's Wholesale Lender (hereafter AWL).

Attached as **Exhibit 3** is the response I received on August 15, 2017 whereby the State of New

York confirmed no such entity on file. The response, though a bit confusing in its language,

acknowledges there was an entity named "America's Wholesale Lender" that registered in New

York state in 2008, but that entity was subsequently dissolved. I attempted to get clarification by

calling the New York Division of Corporations but was informed that New York will not provide

certificates of non-existence for entities that do not exist in its records.

### B. Mortgage Electronic Registration Systems, Inc. ("MERS") does not negotiate the transfers of mortgage notes.

11.    One assignment of the subject DOT and Note has been recorded in the public land

records (**Exhibit 4.**) The assignment purports the following:

### ASSIGNMENT

**Instrument #: 2011-000411728**
**Recording Date:** 8/22/2011
**Execution Date:** 8/19/2011
**Assignor:** Mortgage Electronic Registration Systems, Inc. (MERS)
**Assignee:** The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the
Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2006-24.


12.    Mortgage Electronic Registration Systems, Inc. (MERS) is named as the

beneficiary, not AWL. As such, no lender or creditor is identified as having any beneficial

interest in the security instrument notwithstanding the fact that AWL did not legally exist as

represented on the contract.

13.    The assignment purports to assign, sell, and transfer the subject DOT _and the Note / debt_

from Mortgage Electronic Registration Systems, Inc. (MERS) directly to a REMIC trust without

identifying any principal. It is a well-established legal fact that MERS does not negotiate and

transfer mortgage notes. In 2009, MERS' Officer William C. Hultman testified in the matter

_Kirby v. Bank of America, USDC, SDMS Case. No.: 2:09-cv-00182-DCB-JMR,_ a case that also

involved a Countrywide deed, that MERS did not assign the note, even though the assignment

stated such, and the note can only transfer through endorsement and delivery. Hultman's answers

in interrogatory form was retrieved from the federal court's PACER system and attached as

**Exhibit 5.**


## 3. Declaration of Private Investigator – William J. Paatalo

**INTERROGATORY NO. 7:** Explain in detail how MERS, in the capacity of "nominee" for Countrywide Bank, FSB, could assign the Plaintiffs' Note to BAC on July 13, 2009 if said Note was transferred to Fannie Mae in 2007 (Exhibits 35 and 12 of Plaintiffs' First Amended Complaint).

**RESPONSE TO INTERROGATORY NO. 7:** Objection. Said interrogatory is overbroad, vague, susceptible to multiple interpretations, and seeks information beyond the scope of permissible discovery. Without waiving said objection, MERS responds: A promissory note is a negotiable instrument which is transferred through endorsement and delivery. Any language in the assignment which claimed to assign the note could not do so as notes do not move through assignments in the land records.

**INTERROGATORY NO. 13:** Is it the opinion of MERS that the "Corporation Assignment of Deed of Trust/Mortgage" of July 13, 2009 did in fact transfer beneficial interest in the Plaintiffs' Deed of Trust and Note to BAC?

**RESPONSE TO INTERROGATORY NO. 13:** Objection. Said interrogatory is overbroad, vague, susceptible to multiple interpretations, and seeks information beyond the scope of permissible discovery. Without waiving said objection, MERS responds: The MERS assignment can only assign the interest that MERS is holding. When MERS is named as the beneficiary, it holds legal title to the Deed of Trust and can assign the Deed of Trust. Unless MERS is the note holder it cannot transfer the note since the note moves through endorsement and delivery pursuant to the Uniform Commercial Code.

14. Hence, MERS did not sell, transfer, negotiate, or assign any interest in the subject Note. More importantly, the Note states that the borrower is obligated to pay the lender which is identified as AWL, or any noteholder who takes possession of the note by transfer:

4. Declaration of Private Investigator – William J. Paatalo

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 439,500.00         (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

15. No party can be identified who took physical possession of the Note through transfer, as Assignment #1 has never been corrected to cure the materially false statement that the subject Note was assigned and transferred to "The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2006-24."

### C. Note endorsement is indicia of fraud.

#### (i)    Sjolander does not endorse notes.

16. The Note (**Exhibit 6**) bears a "blank endorsement" by "Michelle Sjolander" who testified in 2012 that a) she never performs the endorsements (even though her name is used on them), b) she does not know the names of the people who performed the endorsements, c) she is generally not present when the endorsements are supposedly done, and d) she cannot say with any certainty when the endorsements were placed on the notes. Sjolander's deposition transcript has been used in many cases around the country, and has been widely circulated online for years. I have provided one of many links for this transcript as follows:

http://www.icelegal.com/files/Transcript_Michele_Sjolander_Depo_3-14-12_Redacted.pdf

#### (ii)    Endorsement does not match the named payee.

17. In addition, the endorsement does not match the named lender AWL as the payee on the note, and shows the lender as Countrywide home Loans, Inc. using America's Wholesale Lender as a DBA. The contract does not identify AWL as being a DBA.

5. Declaration of Private Investigator – William J. Paatalo

  (iii) **Countrywide notes were never endorsed between years 2006-2009 and were never delivered (transferred) to any trusts.**

18. It is my opinion that these endorsements and allonges are being placed upon computer images of the notes at or near the time of foreclosure actions and are made to appear as though they were placed upon the notes while the Countrywide corporate entities were still in existence.

19. This type of behavior was addressed in the Office of the Comptroller of the Currency (OCC) Consent Order (CO) against Bank of America entered on April 13, 2011 which I have attached as **Exhibit 7.** Per the Comptroller's Findings on P.2.

*(2) In connection with certain foreclosures of loans in its residential mortgage servicing portfolio, the Bank:*
   *(c) litigated foreclosure proceedings and initiated non-judicial foreclosure proceedings without always ensuring that either the promissory note or the mortgage document were properly endorsed or assigned and, if necessary, in the possession of the appropriate party at the appropriate time;*

20. It is my opinion that this practice of forging Countrywide endorsements upon imaged copies of notes continues unabated to this day. Furthermore, this pattern and practice was attested to by Linda Demartini, a Bank of America employee, in *Kemp v. Countrywide* as outlined in the complaint captioned, *US BK CT, SD NY Racanelli v. Bank of America, N.A. et. al Case No. 16-22617* which I retrieved from the Federal Court's *PACER* System and attached as **Exhibit 8.** Demartini's deposition transcript is also provided as **Exhibit 9.**

21. As outlined in the complaint.

# 6. Declaration of Private Investigator – William J. Paatalo

*"D. **The Testimony of Linda DeMartini Who Admits in Federal Court That No Countrywide Notes Were Endorsed as of 2009***

*34. BOA is the successor by merger to BAC Home Loan Servicing, LP.*

*35. Linda DeMartini, a supervisor and operational team leader for the Litigation Management Department for BAC Home Loans Servicing L.P. ("BAC Servicing"), testified at trial before the Honorable Federal District Judge Judith H. Wizmur, Chief Bankruptcy Judge for the District of New Jersey in the case of Kemp v. Countrywide Home Loans, Inc., (440 B.R. 624, 628-629 (D. N.J. Bkrtcy (2010)).*

*36. In Kemp, Judge Wizmur found "an allonge purporting to negotiate the note to the Bank of New York was not executed until shortly before the original trial date, and was not affixed to the original note until the second trial date." Id. 631*

*37. Judge Wizmur noted that the new allonge was prepared in anticipation of this litigation, and that it was signed several weeks before the trial by Sharon Mason. Id. at 628.*

*38. According to page 15 of Ms. DeMartini's trial testimony transcript (attached as Exhibit B) she stated in August of 2009:*

*Q Now, you were asked about whether or not the note could be -- was endorsed at the bottom. **Is it generally the practice to endorse the actual note or to use an allonge?***

*A **It's -- I've never seen an actual note that has an endorsement on the bottom.**
Q. So would you say it's normal –
A. It's generally more –
Q. -- to have an allonge?
A. Yeah, it would be more normal to have an allonge.*

*39. At pages 16 and 17 of the Kemp trial transcript, Ms. DeMartini testified:*

*Q. So between 2006 and 2009 when you got a phone call from counsel that said we've got a problem, prepare an allonge, there was no allonge, correct?
A. There wasn't an allonge prior to that, no. This loan, like I said, it was always -- this was a loan that we originated that has always been within the company that yes, it was sold to -- as Bank of New York as the trustee and securitized, but there wasn't a need for an allonge prior to this case.
Q Because there was no litigation pending, correct?
A Well, because there was no litigation –*

*40. At pages 19 through 21, Judge Wizmur personally questioned Ms. DeMartini to clarify her testimony and found:*

## 7. Declaration of Private Investigator – William J. Paatalo

*Q So the question is whether you know whether it's normal practice for Countrywide to execute an allonge at the time that that transfer takes place.*

*A I don't believe that they're always executed exactly when the transfer takes place. I believe that it often times happens that it happens after the fact.*
*Q And does it always happen?*
*A. I can speak that it always happens, no.*
*Q So there's no routine that requires internally, to your knowledge, that the allonge be executed in connection with the transfer of ownership?*
*A No, I don't think that there is a norm in that respect because in a normal course of action and for -- and normal is kind of a hard word anyway -- but*
*Q A normal business practice, an ordinary –*
*A -- but as a normal business practice with a normal loan, often times there really isn't a need for it unless the loan is going to continually to be sold, and since this loan was -- yes, it was transferred to Bank of New York as trustee as it was securitized, but it wasn't that another mortgage company had the loan and then we bought it from them. Like I mentioned, this was always done by Countrywide and we securitized it and we -- you know, we sold it to them –*
*Q This was done --*
*A --and so—*
*Q -- I'm not asking whether it was necessary, I am asking whether there was an ordinary business practice to sign an allonge and the answer is no, there was not?*
*A I don't believe so.*

*41. Finally, Ms. DeMartini later noted at page 48, ln 2-5 that as of 2009:*

*"It never used to be to where the originals were ever requested but lately more and more of the time of day of things around the country, we are being asked to physically produce the originals more frequently."*

*42. As Ms. DeMartini testified truthfully when she stated original notes from* **Countrywide loans originated between 2006 and 2009 were never endorsed.**

*43. It was the practice in 2009 to create allonges just before trial as a normal practice.*

*44. Ms. DeMartini's testimony that no notes were endorsed before they were needed for trial is consistent with the fact that thousands of foreclosures were filed without endorsements on original notes."*

22. A basic principle of property law is encapsulated in the venerable Latin maxim: Nemo

8. Declaration of Private Investigator – William J. Paatalo

dat quod non habet (One cannot give what one does not have)[1]. The principle has been applied universally throughout the United States:

> Although an assignee is said to "step into the shoes" of the assignor, this has generally been in accord with a principle of nemo dat quod non habet -one cannot transfer what one does not have-and thus it is said [*24] at common law that an assignee can acquire no greater right than the assignor held against the obligor. See, e.g., *Adams, 294 S.W.3d at 105. Mitchell v. Residential Funding Corp. S.W.3d, 2010 WL 4720755, (Mo. Ct. App. Nov. 23, 2010).*

> Voidable title is distinct from "valid title," which can be passed freely, and "void title," which cannot be passed to any buyer (regardless of good faith status) because of the nemo dat quod non habet ("he who hath not cannot give") rule.

23. Again, MERS' Consent Judgment with regulators, signed nearly four months prior to the assignment in this matter, determined upon investigation that MERS' practices were "unsafe and unsound.[2]" The investigation also determined that MERS Members do not record interim assignments in the public records each time a mortgage loan has been sold, and because they don't maintain a complete, unbroken chain of title in the MERS System®, no reliable source of information exists where a mortgage servicer or third party business process outsourcer can go to verify the identity of the current mortgage owner. Consumer opposition to the removal of transparency from the public land records by naming Mortgage Electronic Registration Systems, Inc. as the mortgagee in security instruments led Congress to amend the Truth in Lending Act[3]

---

[1] See: Menachem Mautner, "The Eternal Triangles of the Law": Toward a Theory of Priorities in Conflicts Involving Remote Parties, *90 MICH. L.REV. 95, 97-98* . . .

[2] occ.gov/news-issuances/news-releases/2011/nr-occ-2011-47h.pdf

[3] 15 U.S.C. § 1641(f)(2) – Servicer not treated as owner on basis of assignment for administrative convenience. (Effective as of May 20, 2009) A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.

> 15 U.S.C. § 1641(g)(1) In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—
> > (A) the identity, address, telephone number of the new creditor;
> > (B) the date of transfer;
> > (C) how to reach an agent or party having authority to act on behalf of the new creditor;

9. Declaration of Private Investigator – William J. Paatalo

and the Real Estate Settlement Procedures Act[4] to force servicers to disclose the identity of the mortgage owner.

### D. Bifurcation of the subject Deed and Note.

**(i)** **U.S. Treasury confirms in whistleblower action that the REMIC trusts created prior to the financial crisis in 2008, including the assignee trust in this matter, never received title to the mortgage assets underlying the MBS securities.**

24. Attached as **Exhibit 10** is a copy of a whistleblower complaint (WC) filed in U.S. District Court for the Southern District of Florida in the matter: *Stone v. IRS, Case No. 9:22-cv-80154-KAM* filed on 1/31/2022. I located the WC using the Federal Court's PACER System. As shown, the Plaintiffs had filed the claims stemming back to around 2014, and over the period leading up the filing of the 2022 action, obtained evidence and correspondence from the U.S. Treasury admitting, after conducting its own investigation, that the claims had merit.

**F.** **On May 5, 2014, the IRS Field Audit Division Group 1114 forwarded the Plaintiff's Whistleblower Claims to Castellanoz. In a memorandum to the manager of this Group, Castellanoz stated in part:**

"These returns relate to a WB claim impacting numerous taxpayers. **The REMIC IPG has reviewed the information and determined it has merit.** LBI executives and Counsel have decided that only a sample of returns/taxpayers should be examined at this time and the REMIC IPG selected this return." (emphasis added).

**G.** **On May 23, 2013, Castellanoz sent a memorandum to Steven J. Petersell, Senior Team Coordinator and the LBI audit team leader, that the Government has determined to examine the issue identified by the STONE AND CARROLL and stated in part:**

"Although the government does not dispute the claimants [sic] allegations, to examine the transfer of title for all loans in the trust, the government would expend significant resources." (emphasis added). A copy of this memorandum is attached hereto as **Exhibit E.**

---

(D) the location of the place where transfer of ownership of the debt is recorded; and (E) any other relevant information regarding the new creditor.

[4] Regulation X, 12 C.F.R. § 1024.36(d)(2)(i)(A). (Effective January 10, 2014) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan…

10. Declaration of Private Investigator – William J. Paatalo

25. Below is a snippet of the referenced "*Exhibit E.*"

---

**ATTACHMENT TO FORM 11369
CLAIM NUMBER 2011- 005676
CLAIM DATE March 24, 2011
Thomas H Carroll Jr.**

---

The Service has determined not to take any action on the issue identified by the Whistleblower for the following reasons:

Though the Government does not dispute the claimant's allegations, to examine the transfer of title for all loans in the trust, the Government would expend significant resources. Examining a trust, which for tax purposes may have, in form, been imperfect but in substance performed as it was supposed to, *Gregory v. Helvering, 293 U.S. 465* (1935), would not require a determination that trust's REMIC election was invalidated by the facts and circumstances surrounding the legal transfer of title.

The Trust paid for, claimed ownership and listed in their registration filings, all their mortgage securities in a timely fashion. Subsequently all monies were collected, distributed and reported as required.

There was never any harm to the Government or any of the Trust Investors as a consequence of the title transfer failures that are indentified by the informant.

Furthermore, the fact of the mortgage securitization industry's use of MERS as a central clearing house and custodian for the mortgage securities was in the public domain and well know to the Government prior to the date of the informant's claim. This information was reported in a New York Times Article on April 23, 2009 by Mike McIntire entitled "Tracking Loans Trough a Firm That Holds Millions". A copy of this article is attached to this memo.

26. A key allegation, to which the government "does not dispute" is stated in ¶16 – 18 (**Bold emphasis added**),

> 16. This process first runs afoul of the express statutory requirement that REMIC-qualified mortgages remain qualified at all times because the financial industry through the use of MERS separated mortgage notes from mortgages and traded them aggressively and actively as "REPOs", often overnight. Once the notes were separated, they and their underlying debt obligations were no longer secured because to finance the REPOs the notes had to be sold to REPO investors and repurchased without transfer of the real estate recorded security. The design and execution of the MERS

11. Declaration of Private Investigator – William J. Paatalo

*trading system failed the "at all times" real estate security requirement from its inception.*

*17. Moreover, while state laws regarding title to real property subject to a mortgage are diverse in general there are three types of classifications:*

> *A. The legal title to the property in most states is in the real property owner borrower with the security reflected in a mortgage lien. These states are often referred to as "lien theory" states.*

> *B. In some states the legal title is conveyed to the lender, while the equitable title remains in the borrower property owner. These states are referred to as "title states".*

> *C. A third theory is recognized for mortgages in some states wherein the legal title remains in the borrower property owner until such time as the loan obligation is in default, after which the mortgage is treated under the title theory. This theory is referred to as the "intermediate theory.*

*18. A number of states use deeds of trust to secure real property loans. The theory is that when a loan is made title is conveyed to a trustee who is a third party, not the lender or servicer. The definition of qualified mortgages in § 860G(a)(3)A says nothing about deeds of trust and that term is not elsewhere defined, but the definition with respect to mortgages which is "any obligation . . which is principally secured by an interest in real property" encompasses deeds of trust. A deed of trust is an obligation (a loan evidenced by a promissory note) held by a third-party trustee that is secured by an interest in real property as long as it is recorded in the county where the property is located. In other words, only properly recorded mortgages qualify under the statute.*

27.    The allegations, and the government's acknowledgment of merit, supports my overall opinion in this matter that the subject DOT <u>and Note</u> was never negotiated, assigned and transferred to any party, as the Note/debt was bifurcated from the DOT.

### E. Bank of America (Countrywide) admits to "Financial Fraud" on August 15, 2014 in DOJ Consent Judgment and SEC "Cease-and-desist" Order.

28.  On August 21, 2014, the Department of Justice announced a $16.65B fine and consent judgment against Bank of America (Countrywide) for financial fraud.[5]

---

[5] Office of Public Affairs | Bank of America to Pay $16.65 Billion in Historic Justice Department Settlement for Financial Fraud Leading up to and During the Financial Crisis | United States Department of Justice

12. Declaration of Private Investigator – William J. Paatalo

The following facts, to which Bank of America (Countrywide) admitted, was outlined in the
SEC's Cease-And Desist" Order ¶2(III)(A)(3) as follows:

2.      Between 2004 and the first half of 2008, Bank of America and certain
companies that it acquired in the second half of 2008 (the "acquired companies") sold
approximately $2.1 trillion of mortgage loans and residential mortgage backed securities
("RMBS"). Of the $2.1 trillion total, approximately $1.1 trillion were mortgage loans sold
to Government-Sponsored Enterprises ("GSEs"), primarily the Federal National Mortgage
Association ("Fannie Mae") and Federal Home Loan Mortgage Corporation ("Freddie
Mac"). The remaining $963 billion were sold to whole loan investors and into private label
securitizations, frequently bought by large institutions. Roughly $160 billion of mortgage
loans were sold into private label securitizations containing a credit enhancement provided
by a monoline insurer. Approximately $1.8 trillion of the overall loan amounts remained
outstanding as of December 31, 2009.

3.      In connection with the sale of these mortgage loans and RMBS
securitizations, and credit enhancements provided by monoline insurers, Bank of America,
or the acquired companies, made contractual representations and warranties regarding the
underlying mortgage loans. While terms varied by agreement and counterparty, examples
of the types of representations and warranties upon which claims could be based included
good title, conformity with underwriting guidelines, enforceability of mortgage documents,
lien position, and compliance with applicable laws.

"Bank of America admits the facts contained in Annex A attached hereto and
acknowledges that its conduct as set forth in Annex A violated the federal securities
la[w,"]. (P.1(II).

29. The false representations and warranties involved "good title," "enforceability of
mortgage documents, lien position, and compliance with applicable laws."

30. And, per the Bank of America Consent Judgement, BofA is/was not allowed to deny the
allegations. (Consent Order, P.5, ¶12 as follows):

/

/

/

/

/

/

13. Declaration of Private Investigator – William J. Paatalo

/

/

12.    Defendant understands and agrees to comply with the terms of 17 C.F.R.

§ 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant

or respondent to consent to a judgment or order that imposes a sanction while denying the

allegations in the complaint or order for proceedings," and "a refusal to admit the allegations is

equivalent to a denial, unless the defendant or respondent states that he neither admits nor denies

the allegations." As part of Defendant's agreement to comply with the terms of Section 202.5(e),

Defendant: (i) will not take any action or make or permit to be made any public statement

denying, directly or indirectly, any allegation in the complaint or creating the impression that the

complaint is without factual basis; (ii) will not make or permit to be made any public statement

to the effect that Defendant does not admit the allegations of the complaint, or that this Consent

contains no admission of the allegations, without also stating that Defendant does not deny the

allegations; (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in

this action to the extent that they deny any allegation in the complaint; and (iv) stipulates solely

for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11

U.S.C. §523, that the allegations in the complaint are true, and further, that any debt for

disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under the

Final Judgment or any other judgment, order, consent order, decree or settlement agreement

entered in connection with this proceeding, is a debt for the violation by Defendant of the federal

securities laws or any regulation or order issued under such laws. If Defendant breaches this

agreement, the Commission may petition the Court to vacate the Final Judgment and restore this

action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial

14. Declaration of Private Investigator – William J. Paatalo

obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings

in which the Commission is not a party.

**(i) Assignee trust is named in the DOJ Consent Judgment and SEC "Cease-and-desist" Order.**

31. Attached to the DOJ's Consent Judgement and SEC Cease and Desist announcement as

"Annex 4" is the roster of 349 MBS transactions[6]. (Also attached as **Exhibit 11**). Ex.11, P.9,

shows the current assignee trust abbreviated as "CWL 2006-24" as shown here:

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

---

[6] **349 MBS list - AIG - BofA - DOJ 16B settlement roster.pdf**

15. Declaration of Private Investigator -- William J. Paatalo

# Securitizations issued by Countrywide

## Deal Names*

CWL 2006-11

CWL 2006-12

CWL 2006-13

CWL 2006-14

CWL 2006-15

CWL 2006-16

CWL 2006-17

CWL 2006-18

CWL 2006-19

CWL 2006-2

CWL 2006-20

CWL 2006-21

CWL 2006-22

CWL 2006-23

CWL 2006-24

32. For the reasons set forth above, the evidence reveals a clouded and fatally defective chain of title. No lender can be identified because AWL did not legally exist as represented in the contract. The Note shows a likely forged endorsement upon an imaged copy, naming a different lender / payee, and there is no evidence of any negotiated sale and transfer of the Note to any party due to MERS' assignment being arguably void. Having been involved in correspondence and pleadings between homeowners and attorneys representing law firms that concentrate on foreclosures of alleged loans subject to claims of securitization, I can state with near 100% certainty that there is no legal entity that was entrusted (as a trust or trustee) with the subject

16. Declaration of Private Investigator – William J. Paatalo

debt, and this opinion appears to have been confirmed in the government's response to the WC complaint noted above.

I declare under penalty of perjury, under the laws of the State of California and the United States that the above is true and correct, and that this declaration was prepared on August 7, 2024, for use as evidence in court.

William J. Paatalo
Private Investigator – Oregon PSID# 49411

17. Declaration of Private Investigator – William J. Paatalo

## MEMORANDUM OF AUTHORITY for COMMERCIAL PROCESS

A piece of the legal authority for commercial process International Bill of Exchange/Money Order item tendered for discharge of debt, The instrument AS MAY BE tendered to you through your bank (financial institution) and to be negotiated to the United States Treasury for settlement is an "Obligation of the United States," under Title 18 USC § 8, representing as the definition provides a "certificate of indebtedness …drawn upon an authorized officer of the United States," (in this case the Secretary of the Treasury)"issued under an Act of Congress", in this case Public Law 73-10, Volume 48, Chap 48 Stat 112, HJR-192 of 1933 and Title 31 USC § 3123 and 31 USC § 5103 and by treaty; in this case the UNITED NATIONS CONVENTION ON INTERNATIONAL BILLS OF EXCHANGE AND INTERNATIONAL PROMISSORRY NOTES (UNCITRAL) and the Universal Postal Union headquartered in Bern, Switzerland).

The International Bill of Exchange/Money Order/Promissory *Note is legal tender *["This Note is Legal Tender for All Debts Public and Private"] as a national bank note, note of a national Banking Association, by legal tender and/or statutory definition (UCC § 4-105, 12 CFR §229.2, § 210.2, 12 USC § 1813), issued under authority of the United States Code 31 USC § 392, § 5103, which officially defines this as a statutory legal tender of THE UNITED STATES, and is issued in accordance with 31 USC § 3123 and Volume 48, Chapter 48 Stat. 112, HJR-192 (1933), Public Law 73-10 which establishes and provides for the issuance as "Public Policy" in remedy for discharge of equity interest recovery on that portion of the public debt to its Principals, and Sureties bearing the obligations of THE UNITED STATES. *"…31 USC § 5118(d)(2) provided for many years that a requirement of repayment of debt in a particular kind of coin or currency could be made by legal tender. As of October 27, 1977, legal tender for discharge of debt is no longer required. That is because legal tender is not in circulation at par with the promise to pay credit. Negotiable Instruments via Guaranty Trust of New York v. Henwood, et al 59 S CT 847 (1933), 307 U.S. 847 (1939),FN3 NOS 384, 485 holds that 31 U.S.C. § 5118(d)(2)was enacted to remedy the specific evil of tying debt to any particular currency or requiring payment in a greater number of dollars than promised. Since October 27, 1977, there can be no requirement of repayment in legal tender either, since legal tender was not loaned and repayment need only be in equivalent kind: A negotiable instrument representing credit, i.e. an International Bill of Exchange…"* Or as otherwise stated; NO ONE TODAY CAN MAKE DEMAND IN PAYMENT IN ANY SPECIFIC COIN OR CURRENCY! This Money Order/Bill of Exchange/Trade Acceptance/Promissory Note is in accord with Public Law 73-10, Volume 48, Chapter 48 Stat. 112, HJR 192 June 5, 1933 & the Uniform Commercial Code, and is presented for the receiver to the federal Window, for settlement (EFT), within the 3-day Truth-in-Lending time for settlement.

As of 1933 a person has lawful money of account to 'pay' debts at law without becoming a tort feasor. 'Accepted for Value' and 'Bills of Exchange are lawful to discharge debt under Public Law 73-10, Volume 48, Chapter 48 Stat. 112, HJR-192 of 1933, Title 31 USC § 3123, and 31 USC § 5103, 31 USC § 5118(d)(2) and by treaty; in this case the United Nations Convention on International Bills of Exchange and International Promissory Notes (UNCITRAL) and the Universal Postal Union Headquartered in Berne, Switzerland.  The International Bill of Exchange is legal tender as a national bank note, or note of a National Banking Association, by legal and/or statutory definition (UCC § 4-105, 12 CFR Sec. 229.2, 210.2,12 USC § 1813. Issued under authority of the UNITED STATES Code 31 USC § 392, § 5103, § 5118(d)(2), which officially defines this as a statutory legal tender obligation of the UNITED STATES, and is issued in accordance with 31 USC § 3123 and HJR-192 (1933) which establishes and provides for its

issuance as "*Public Policy" in remedy for discharge of equity interest recovery on that portion of the public debt to its principals, and sureties of the UNITED STATES. I declare that legal tender was not loaned by the bank and therefore legal tender does not have to be used in the repayment.  Citing the Henwwood case" "…negotiable Instruments via **Guaranty Trust of New York v. Henwood**, et al 59 S CT 847 (1933), 307 U.S.847 (1939), FN3 NOS 384 485 holds that 31 U.S.C. § 5118 was enacted to remedy the specific evil of tying debt to any particular currency or requiring payment in a greater number of dollars than promised. Since October 27, 1977 there can be no requirement of repayment in legal tender either, since legal tender was not loaned and repayment need only be made in equivalent kind: A negotiable Instrument representing credit," i.e., an International Bill of Exchange/Money Order/Promissory Note, or as otherwise stated; **NO ONE TODAY CAN MAKE DEMAND IN PAYMENT IN ANY SPECIFIC COIN OR CURRENCY!**

That private unincorporated persons whose private assets and property are being used to collateralize the obligations of the United States since 1933, are collectively and nationally constituting a legal class of persons being a "national bank" or "national banking association" with the right to issue such notes  against the obligation of the UNITED STATES  for equity interest recovery due and accrued to these Principals and Sureties of the United States backing the obligations of US currency and credit; as a means for the legal tender discharge of lawful debts in commerce as remedy due them in conjunction with US obligations to the discharge of that portion of the public debt, which is provided for in the present financial *reorganization still in effect and ongoing since 1933; hence, a Government Obligation as defined in 31 CFR 225.2; Reversionary interest in Titled Securities may be assigned, transferred, or conveyed to the United States Government upon conditional acceptance that full acquittance and discharge for all purposes of the obligation (past, present, and future); hence, no person shall be held liable in any court in respect to anything done or omitted in good faith, etc... Pursuant to 12 U.S.C. § 95 (a)(2).

*For further information please contact the Secretary of Treasury, Department of Treasury in Puerto Rico as this account has been set off, settled, closed and discharged pursuant to Public Policy found at Public Law 73-10, Vol. 48, Chap. 48 Stat. 112 - House Joint Resolution 192, 3l U.S.C. § 5118 (d)(2).

"The United States government is a foreign corporation with respect to a state." 19 *Corpus Juris Secundum* 541.

Location of United States. "The United States is located in the District of Columbia." - Uniform Commercial Code, UCC § 9-307(h).

*Secretary of the Treasury of Puerto Rico was appointed receiver over bankrupt United States in Reorganization Plan No. 26 (1950), Title 5, United States Code, Section 903, Public Law 94-564 (Legislative History, p. 5967).

"Secretary. The Secretary of the Treasury of Puerto Rico." Title 27, Code of Federal Regulations, Section 250.11. The title, "Secretary of the Treasury," is a euphemistic abbreviation of the *actual* title, "Secretary of the Treasury of Puerto Rico," also known simply as "Secretary."

# U.S. Bankruptcy Court
## Central District of California (Santa Ana)
## Bankruptcy Petition #: 8:24-bk-11449-TA

|  |  |
|---|---|
| | *Date filed:* 06/06/2024 |
| | *341 meeting:* 07/23/2024 |
| | *Deadline for filing claims:* 08/15/2024 |
| | *Deadline for filing claims (govt.):* 12/03/2024 |

*Assigned to:* Theodor Albert
Chapter 13
Voluntary
Asset

*Debtor*
**George Barreda**
349 E Richland Ave
Orange, CA 92865
ORANGE-CA
714-270-7581
SSN / ITIN: xxx-xx-6670

represented by **George Barreda**
PRO SE

*Trustee*
**Amrane (SA) Cohen (TR)**
770 The City Drive South Suite 3700
Orange, CA 92868
714-621-0200

*U.S. Trustee*
**United States Trustee (SA)**
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4593
(714) 338-3400

| Filing Date | # | Docket Text |
|---|---|---|
| 06/06/2024 | <u>1</u><br>(13 pgs; 3 docs) | Chapter 13 Voluntary Petition Individual. Fee Amount $313 Filed by George Barreda Summary of Assets and Liabilities (Form 106Sum or 206Sum) due 6/20/2024. Schedule A/B: Property (Form 106A/B or 206A/B) due 6/20/2024. Schedule C: The Property You Claim as Exempt (Form 106C) due 6/20/2024. Schedule D: Creditors Who Have Claims Secured by Property (Form 106D or 206D) due 6/20/2024. Schedule E/F: Creditors Who Have Unsecured Claims (Form 106E/F or 206E/F) due 6/20/2024. Schedule G: Executory Contracts and Unexpired Leases (Form 106G or 206G) due 6/20/2024. Schedule H: Your Codebtors (Form 106H or 206H) due 6/20/2024. Schedule I: Your Income (Form 106I) due 6/20/2024. Schedule J: Your Expenses (Form 106J) due 6/20/2024. Declaration About an Individual Debtors Schedules (Form 106Dec) due 6/20/2024. Statement of Financial Affairs (Form 107 or 207) due 6/20/2024. Chapter 13 Plan (LBR F3015-1) due by 6/20/2024. Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period (Form 122C-1) Due: 6/20/2024. Chapter 13 Calculation of Your Disposable Income (Form 122C-2) Due: 6/20/2024. Declaration by Debtors as to Whether Income was Received from an Employer within 60-Days of the Petition Date (LBR Form F1002-1) due |

| | | by 6/20/2024. Incomplete Filings due by 6/20/2024. (TS) (Entered: 06/06/2024) |
|---|---|---|
| 06/06/2024 | 2 | Statement About Your Social Security Number (Official Form 121) Filed by Debtor George Barreda . (TS) (Entered: 06/06/2024) |
| 06/06/2024 | 3 (1 pg) | Certificate of Credit Counseling Filed by Debtor George Barreda . (TS) (Entered: 06/06/2024) |
| 06/06/2024 | 4 (3 pgs) | Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Notice of Appointment of Trustee Cohen (TR), Amrane (SA) with 341(a) meeting to be held on 7/23/2024 at 09:00 AM via Zoom - Cohen: Meeting ID 879 620 7359, Passcode 2248891822, Phone 1 657 222 4207. Confirmation hearing to be held on 8/21/2024 at 01:30 PM at Crtrm 5B, 411 W Fourth St., Santa Ana, CA 92701. Government Proof of Claim due by 12/3/2024. Objection 523 Complaint Due: 9/23/2024. Proofs of Claims due by 8/15/2024. (TS) (Entered: 06/06/2024) |
| 06/06/2024 | 5 | Receipt of Chapter 13 Filing Fee - $313.00 by TS. Receipt Number 81000459. (admin) (Entered: 06/06/2024) |
| 06/07/2024 | | Notice of Debtor's Prior Filings for debtor George Barreda Case Number 19-12290, Chapter 13 filed in California Central Bankruptcy on 06/14/2019 , Dismissed for Other Reason on 09/20/2022; Case Number 24-10835, Chapter 13 filed in California Central Bankruptcy on 04/03/2024 , Dismissed for Failure to File Information on 04/22/2024; Case Number 22-11758, Chapter 13 filed in California Central Bankruptcy on 10/16/2022 , Dismissed for Other Reason on 02/08/2024; Case Number 12-12099, Chapter 13 filed in California Central Bankruptcy on 02/20/2012 , Dismissed for Failure to File Information on 02/28/2012; Case Number 98-26824, Chapter 7 filed in California Central Bankruptcy on 12/17/1998 , Standard Discharge on 03/29/1999.(Admin) (Entered: 06/07/2024) |
| 06/08/2024 | 6 (4 pgs) | BNC Certificate of Notice (RE: related document(s)4 Meeting of Creditors Chapter 13 (309I)(AutoAssign)) No. of Notices: 3. Notice Date 06/08/2024. (Admin.) (Entered: 06/08/2024) |
| 06/08/2024 | 7 (2 pgs) | BNC Certificate of Notice (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor George Barreda) No. of Notices: 1. Notice Date 06/08/2024. (Admin.) (Entered: 06/08/2024) |
| 06/08/2024 | 8 (2 pgs) | BNC Certificate of Notice (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor George Barreda) No. of Notices: 1. Notice Date 06/08/2024. (Admin.) (Entered: 06/08/2024) |
| 06/13/2024 | 9 (1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Delmotte, Joseph. (Delmotte, Joseph) (Entered: 06/13/2024) |
| 06/18/2024 | 10 (3 pgs) | Debtor's Motion to Extend Deadline to File Schedules or Provide Required Information, and/or Plan (Case Opening Documents) Filed by Debtor George Barreda (GD) (Entered: 06/18/2024) |
| 06/20/2024 | 11 (1 pg) | Order Granting Motion To Extend Deadline to File Schedules or Provide Required Information, and/or Plan (Case Opening Documents) (BNC-PDF) (Related Doc # 10) - New Deadline To File Case Commencement |

| | | |
|---|---|---|
| | | Documents is July 15, 2024. Signed on 6/20/2024. (GD) (Entered: 06/20/2024) |
| 06/22/2024 | **12**<br>(2 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)11 Order on Motion to Extend Deadline to File Schedules and/or Plan (Case Opening Documents - All Chapters) (BNC-PDF)) No. of Notices: 1. Notice Date 06/22/2024. (Admin.) (Entered: 06/22/2024) |
| 07/01/2024 | 13 | Hearing Set Confirmation hearing to be held on 8/21/2024 at 01:30 PM at Crtrm 5B, 411 W Fourth St., Santa Ana, CA 92701. The case judge is Theodor Albert (GD) (Entered: 07/01/2024) |
| 07/08/2024 | **14**<br>(2 pgs) | Trustee's Notice to the debtor(s) that the case may be dismiss or converted at the confirmation hearing (batch) . (Cohen (TR), Amrane (SA)) (Entered: 07/08/2024) |
| 07/15/2024 | **15**<br>(49 pgs) | Summary of Assets and Liabilities for Individual (Official Form 106Sum or 206Sum) , Schedule A/B Individual: Property (Official Form 106A/B or 206A/B) , Schedule C: The Property You Claimed as Exempt (Official Form 106C) , Schedule D Individual: Creditors Who Have Claims Secured by Property (Official Form 106D or 206D) , Schedule E/F Individual: Creditors Who Have Unsecured Claims (Official Form 106F or 206F) , Schedule G Individual: Executory Contracts and Unexpired Leases (Official Form 106G or 206G) , Schedule H Individual: Your Codebtors (Official Form 106H or 206H) , Schedule I Individual: Your Income (Official Form 106I) , Schedule J: Your Expenses (Official Form 106J) , Declaration About an Individual Debtor's Schedules (Official Form 106Dec) , Statement of Financial Affairs for Individual Filing for Bankruptcy (Official Form 107 or 207) , Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period for 3 Years , Disposable Income Is Not Determined (Official Form 122C-1) Filed by Debtor George Barreda (RE: related document(s)1 Voluntary Petition (Chapter 13)). (VN) (Entered: 07/15/2024) |
| 07/15/2024 | **16**<br>(22 pgs) | Chapter 13 Plan (LBR F3015-1). Filed by Debtor George Barreda (RE: related document(s)1 Chapter 13 Voluntary Petition Individual. Fee Amount $313 Filed by George Barreda Summary of Assets and Liabilities (Form 106Sum or 206Sum) due 6/20/2024. Schedule A/B: Property (Form 106A/B or 206A/B) due 6/20/2024. Schedule C: The Property You Claim as Exempt (Form 106C) due 6/20/2024. Schedule D: Creditors Who Have Claims Secured by Property (Form 106D or 206D) due 6/20/2024. Schedule E/F: Creditors Who Have Unsecured Claims (Form 106E/F or 206E/F) due 6/20/2024. Schedule G: Executory Contracts and Unexpired Leases (Form 106G or 206G) due 6/20/2024. Schedule H: Your Codebtors (Form 106H or 206H) due 6/20/2024. Schedule I: Your Income (Form 106I) due 6/20/2024. Schedule J: Your Expenses (Form 106J) due 6/20/2024. Declaration About an Individual Debtors Schedules (Form 106Dec) due 6/20/2024. Statement of Financial Affairs (Form 107 or 207) due 6/20/2024. Chapter 13 Plan (LBR F3015-1) due by 6/20/2024. Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period (Form 122C-1) Due: 6/20/2024. Chapter 13 Calculation of Your Disposable Income (Form 122C-2) Due: 6/20/2024. Declaration by Debtors as to Whether Income was Received from an Employer within 60-Days of the Petition Date (LBR Form F1002-1) due by 6/20/2024. Incomplete Filings due by 6/20/2024. (TS)). (VN) (Entered: 07/15/2024) |

| | | |
|---|---|---|
| 07/15/2024 | <u>17</u><br>(1 pg) | Declaration by Debtor as to Whether Debtor(s) Received Income From an Employer Within 60 Days of Petition (LBR Form F1002-1) MISSING THE PAYSTUBS. Filed by Debtor George Barreda (RE: related document(s)<u>1</u> Voluntary Petition (Chapter 13)). (VN) (Entered: 07/15/2024) |
| 07/16/2024 | <u>18</u><br>(2 pgs) | Declaration by Debtor as to Whether Debtor(s) Received Income From an Employer Within 60 Days of Petition (LBR Form F1002-1) -The Paystub. Filed by Debtor George Barreda . (VN) (Entered: 07/16/2024) |
| 07/19/2024 | <u>19</u><br>(1 pg) | Notice Regarding Chapter 13 Confirmation Hearing Will Take Place Using Zoom For Government For August 21,2024 at 1:30 p.m. To Creditors (BNC-PDF) (GD). (Entered: 07/19/2024) |
| 07/21/2024 | <u>20</u><br>(3 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)<u>19</u> Notice to creditors (BNC-PDF)) No. of Notices: 3. Notice Date 07/21/2024. (Admin.) (Entered: 07/21/2024) |
| 07/24/2024 | <u>21</u><br>(28 pgs) | Objection to Confirmation of Plan Filed by Creditor THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-24 (RE: related document(s)<u>16</u> Chapter 13 Plan (LBR F3015-1). Filed by Debtor George Barreda (RE: related document(s)<u>1</u> Chapter 13 Voluntary Petition Individual. Fee Amount $313 Filed by George Barreda Summary of Assets and Liabilities (Form 106Sum or 206Sum) due 6/20/2024. Schedule A/B: Property (Form 106A/B or 206A/B) due 6/20/2024. Schedule C: The Property You Claim as Exempt (Form 106C) due 6/20/2024. Schedule D: Creditors Who Have Claims Secured by Property (Form 106D or 206D) due 6/20/2024. Schedule E/F: Creditors Who Have Unsecured Claims (Form 106E/F or 206E/F) due 6/20/2024. Schedule G: Executory Contracts and Unexpired Leases (Form 106G or 206G) due 6/20/2024. Schedule H: Your Codebtors (Form 106H or 206H) due 6/20/2024. Schedule I: Your Income (Form 106I) due 6/20/2024. Schedule J: Your Expenses (Form 106J) due 6/20/2024. Declaration About an Individual Debtors Schedules (Form 106Dec) due 6/20/2024. Statement of Financial Affairs (Form 107 or 207) due 6/20/2024. Chapter 13 Plan (LBR F3015-1) due by 6/20/2024. Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period (Form 122C-1) Due: 6/20/2024. Chapter 13 Calculation of Your Disposable Income (Form 122C-2) Due: 6/20/2024. Declaration by Debtors as to Whether Income was Received from an Employer within 60-Days of the Petition Date (LBR Form F1002-1) due by 6/20/2024. Incomplete Filings due by 6/20/2024. (TS)). (VN)). (Delmotte, Joseph) (Entered: 07/24/2024) |
| 07/29/2024 | <u>22</u><br>(6 pgs) | Objection to Confirmation of Plan *with Notice and Proof of Service Attached.* Filed by Trustee Amrane (SA) Cohen (TR). (Cohen (TR), Amrane (SA)) (Entered: 07/29/2024) |

| PACER Service Center |
|---|
| **Transaction Receipt** |

George Barreda
349 E Richland Ave
Orange, California state

Date: August 7, 2024

Original to:
Jack Navarro - CEO                                    Registered Mail # RF 571 139 430 US
Shellpoint Mortgage Servicing
55 Beattie Place Suite 500
Greenville, South Carolina 29603

Copy to:
Francisco Pares Alicea                                Certified Mail # 9589 0710 5270 1869 5439 71
Secretary of the Treasury
Department of Finance,
P.O. Box 9024140
San Juan, Puerto Rico 00902-4140

Regarding: Countrywide Home Loans # 152621758; Shellpoint Mortgage Servicing
Loan #0578148533, Shellpoint Mortgage Servicing FEIN #27-2846251

Mr. Jack Navarro:

In good faith and fair dealing you have seven days (7) upon receipt of my tender to
return same if not satisfied for any reason other than "Prohibited by Law" accompanied
with your lawful and legal instructions as to how you are legally able to refuse my tender
without a simultaneous mandatory discharge. Otherwise this obligation is discharged
and released, and upon expiration of said seven (7) days you are further required to
adjust your accounting records, notify all bond rating systems of settlement and closure
of said account and further pursuant to California Civil Code 2941 you are directed to
execute a reconveyance of the subject property after satisfaction, settlement and
closure of said account within seven (7) days.

Thank you for your prompt attention,

George Barreda

Attachments:  International Promissory Note, IRS Form 56  IRS Form W-9, Original loan
documents.

# International Promissory Note
## Commercial Claim: Account Number 564876670

$729,084.00
Principal Amount: $729,084.00

REG. NO.: RF 571 139 430 US

TRACKING #: GB08082024IPN

Dated: August 8, A.D. 2024
George Barreda
c/o 349 E Richland Ave
Orange, California state

Pursuant to the Promissory Note of Loan Account #152621758 created by Countrywide Home Loans and executed on October 26, 2006 under Account Number 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. I, GEORGE BARREDA, the priority creditor/maker hereby tender payment of the above-referenced obligation in full, as follows: This is a firm promise to pay to the order of Shellpoint Mortgage Servicing. FEIN 27-2846251 Shellpoint Mortgage Servicing FEIN 27-2846251 as servicer of Loan #0578148533, the sum of Seven Hundred, Twenty-Nine Thousand Eighty-Four Dollars ($729,084.00) in units of unspecified value "in like kind", together with interest thereon at the rate of 8% per annum on the unpaid of all outstanding claims against commercial vehicle: GEORGE BARREDA pertaining to Loan Account #152621758, for settlement and closure for said claim once and for all.

Further, this instrument is Issued in Accordance [Except as voided, precluded, excluded, prohibited, or disqualified as a legal tender obligation] The United States by federal statute statute or regulation] with 31 USC § 3123, Negotiable Instruments Act 1881, current Federal Public Policy of House Joint Resolution 192 (HJR-192), June 5, 1933 Public Law 73, Chap 48, 48 Stat 112 and successor enactments, as Federal "Public Policy" which discharges all public debts without expansion of credit, debt or obligation upon THE UNITED STATES for the discharge of "every obligation", "for all debts public charges, taxes and dues" "TO THE UNITED STATES" and/or its sub-corporate chartered entities which are mandated to acknowledge and abide by as remedy for equity interest recovery upon "the full faith and credit of THE UNITED STATES" for Obligation OF THE UNITED STATES and sub-corporate chartered entities to the discharge and recovery of the public debt, "dollar for dollar", to the American People as Principals, Prime-Creditors, and Holders in Equity over THE UNITED STATES as Sureties for its obligations, currency and credit. See: March 9, 1933 Congressional Record – House page 83; 12 USC § 411, 18 USC § 8, 12 USC; ch. 6, 38 Stat. 251 Sect 14(a), 31 USC § 3123 § 5103, § 5118 (d)(2), § 5312; Public Law 97-258: U.C.C Article 4 §302 and by treaty; in this case the UNITED NATIONS CONVENTION ON INTERNATIONAL BILLS OF EXCHANGE AND INTERNATIONAL PROMISSORRY NOTES (UNCITRAL) and the Universal Postal Union headquartered in Bern, Switzerland, with rights protected under the equal protection under the law provision guaranteed in the 14th Amendment of the United States Constitution as they pertain to the laws of currency, consideration and tender, see the U.S. Supreme Court in **United States v. Russell** (13 Wall, 623, 627), **Pearlman v. Reliance Ins. Co.**, 371 U.S. 132,136,137 (1962), **The United States v. Hooe**, 3 Cranch (U.S.)73(1805), and in conformity with the U.S. Supreme Court in Knox v. Lee,79 U.S. 287 (1870), United States v. Wardwell,172 U.S.48 (1898) and **Guaranty Trust Co. v. Henwood**, 307 U.S. 247(1939) and, which is provided for in the present financial "reorganization still in effect and ongoing since HJR-192 (1933).

I do hereby invoke the remedy provided under said current federal public policy, thus, said sum shall be due, payable, and paid As Good As Aval, For Value Received in the manner following:

On the day that the Congress of the United States once more resumes executing its duties and obligations, in pursuance of "the supreme Law of the land," particularly with respect to the nation's money, by coining money of substance, and circulating it, and at the same time, the States comply with the constitutional prohibition against their making any thing but gold and silver coin a tender in payment of debt, or as soon thereafter as is practicable. Until then, the remedy provided under House Joint Resolution 192, June 5, 1933, Public Law 73-10, Chap 48, 48 Stat 112 supra, and U.C.C. § 3-603 is hereby invoked to settle, close and discharge the above numbered case/account within seven (7) calendar days of receipt of this instrument as a matter of law and custom.

Please take notice of the controlling rule of law:

Article1, Section 8, Clause 5, of the Constitution of the United States for the united States of America, "the supreme law of the land", requires Congress to coin money of substance, or specie, spend it into circulation, and regulate its value, for the sake of permanence, and regulate the value of foreign coin, for the sake of parity of value, as an integral part of our lawful, fixed, national standard of weights and measures. Art. 1, Section 10, Clause 1, of the same Constitution, further prohibits the States from deviating from the National Standards by making any thing but gold and silver coin a tender in payment of debt.

Attested sans recours by:

_George Barreda_

George Barreda

---

*For further information please contact the Secretary of Treasury, Department of Treasury in Puerto Rico as this account has been set off, settled, closed, and discharged pursuant to Public Policy supra. See appended: IRC FORM 56 – Notice Concerning Fiduciary Relationship – IRC §§ 6036 & 6903.

Form **56**
(Rev. November 2022)

Department of the Treasury
Internal Revenue Service

# Notice Concerning Fiduciary Relationship

(Internal Revenue Code Sections 6036 and 6903)

Go to *www.irs.gov/Form56* for instructions and the latest information.

OMB No. 1545-0013

| Part I | Identification |
|---|---|

| Name of person for whom you are acting (as shown on the tax return) | Identifying number | Decedent's social security no. |
|---|---|---|
| **George Barreda** | | **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** |

Address of person for whom you are acting (number, street, and room or suite no.)
**349 E Richland Ave**

City or town, state, and ZIP code (If a foreign address, see instructions.)
**Orange, CA 92865**

Fiduciary's name
**Francisco Parés Alicea**

Address of fiduciary (number, street, and room or suite no.)
**Department of Finance, P.O. Box 9024140**

| City or town, state, and ZIP code | Telephone number (optional) |
|---|---|
| **San Juan, Puerto Rico 00902-4140** | ( **787** )    **622-0123** |

## Section A.  Authority

**1**  Authority for fiduciary relationship. Check applicable box:

**a** ☐ Court appointment of testate estate (valid will exists)

**b** ☐ Court appointment of intestate estate (no valid will exists)

**c** ☑ Court appointment as guardian or conservator

**d** ☐ Fiduciary of intestate estate

**e** ☑ Valid trust instrument and amendments

**f** ☑ Bankruptcy or assignment for the benefit of creditors

**g** ☑ Other. Describe: **All commercial/financial/mercantile transactions pursuant HJR-192, Public Law 73-10, 27 CFR 72.11, UCC 3-603**

**2a** If box 1a, 1b, or 1d is checked, enter the date of death:

**b** If box 1c, 1e, 1f, or 1g is checked, enter the date of appointment, taking office, or assignment or transfer of assets: **commencing on DOB on Certificate of Live Birth to settle, setoff, discharge, close all commercial/financial/mercantile debts under SSN 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**

## Section B.  Nature of Liability and Tax Notices

**3**  Type of taxes (check all that apply): ☑ Income  ☑ Gift  ☑ Estate  ☑ Generation-skipping transfer  ☑ Employment
☑ Excise  ☑ Other (describe): **imposts, duties, fines, penalties, assessment, levys**

**4**  Federal tax form number (check all that apply): **a** ☑ 706 series  **b** ☑ 709  **c** ☑ 940  **d** ☑ 941, 943, 944
**e** ☑ 1040 or 1040-SR  **f** ☑ 1041  **g** ☐ 1120  **h** ☑ Other (list): **1096, 1099-OID, 1099-A,B,C 1099-Misc., W-9**

**5**  If your authority as a fiduciary does not cover all years or tax periods, check here . . . . . . . . . . ☐
and list the specific years or periods within your authority:

**For Paperwork Reduction Act and Privacy Act Notice, see separate instructions.**    Cat. No. 16375I    Form **56** (Rev. 11-2022)

Form 56 (Rev. 11-2022)                                                                                      Page **2**

| **Part II** | **Revocation or Termination of Notice** |

### Section A—Total Revocation or Termination

**6**    Check this box if you are revoking or terminating all prior notices concerning fiduciary relationships on file with the Internal Revenue Service for the same tax matters and years or periods covered by this notice concerning fiduciary relationship .  . ☐

Reason for termination of fiduciary relationship. Check applicable box:

**a**    ☐   Court order revoking fiduciary authority

**b**    ☐   Certificate of dissolution or termination of a business entity

**c**    ☐   Other. Describe:

### Section B—Partial Revocation

**7a**    Check this box if you are revoking earlier notices concerning fiduciary relationships on file with the Internal Revenue Service for the same tax matters and years or periods covered by this notice concerning fiduciary relationship .  .  .  .  .  . ☐

**b**    Specify to whom granted, date, and address, including ZIP code.

### Section C—Substitute Fiduciary

**8**    Check this box if a new fiduciary or fiduciaries have been or will be substituted for the revoking or terminating fiduciary and specify the name(s) and address(es), including ZIP code(s), of the new fiduciary(ies) .  .  .  .  .  .  . ☐

**Jack Navarro, CEO of Shellpoint Mortgage Servicing regarding Loan #0578148533 in the amount of $729,084.00 for tender of IPN # RF 571 139 430 US by Authorized Representative George Barreda for setoff, settlement, discharge and reconveyance of said loan.**

| **Part III** | **Court and Administrative Proceedings** |

| Name of court (if other than a court proceeding, identify the type of proceeding and name of agency) | Date proceeding initiated |
|---|---|
| **U.S. Bankruptcy Court Judge Theodor Albert, Chapter 13 Trustee Amrane Cohen** | **June 6, 2024** |

| Address of court | Docket number of proceeding |
|---|---|
| **411 West Fourth Street** | **8:24-bk-11449-TA** |

| City or town, state, and ZIP code | Date | Time | | Place of other proceedings |
|---|---|---|---|---|
| **Santa Ana, CA 92701** | | | ☐ a.m.<br>☐ p.m. | |

| **Part IV** | **Signature** |

**Please Sign Here**

Under penalties of perjury, I declare that I have examined this document, including any accompanying statements, and to the best of my knowledge and belief, it is true, correct, and complete.

| Fiduciary's signature | Title, if applicable | Date |
|---|---|---|

Form **56** (Rev. 11-2022)

Prepared by: ESTELA CASILLAS

LOAN # ███████

# INTEREST ONLY ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

OCTOBER 19, 2006                     FULLERTON                     CALIFORNIA
[Date]                               [City]                        [State]

349 EAST RICHLAND AVENUE, ORANGE, CA 92865-1157
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan I have received, I promise to pay U.S. $ 439,500.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of · 6.350 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**
I will make a payment on the first          day of every month, beginning on  DECEMBER 01, 2006        .
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay Principal and interest by making a payment every month as provided below.

I will make my monthly payments of Principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note.

Each monthly payment will be applied as of its scheduled due date, and if the payment includes both Principal and interest, it will be applied to interest before Principal. If, on  NOVEMBER 01, 2036       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $ 2,325.69          . This amount may change.

**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**
The interest rate I will pay may change on the first          day of NOVEMBER, 2008     , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* . The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

CALIFORNIA INTEREST ONLY ADJUSTABLE RATE NOTE - LIBOR INDEX
⊕ Interest Only ARM Note
2D968-CA (10/06)(d)                          Page 1 of 3





EXHIBIT A

LOAN ▮▮▮▮▮▮▮▮

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX & ONE-HALF          percentage point(s) (   6.500   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than   7.850   % or less than   6.350   %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE & ONE-HALF          percentage point(s) (   1.500   %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than   13.350   % or less than   6.350   %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G) Date of First Principal and Interest Payment

The date of my first payment consisting of both Principal and interest on this Note (the "First Principal and Interest Payment Due Date") will be the first monthly payment date after the sixtieth (60th)   scheduled
monthly payment.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

Except as provided below, I may make a Full Prepayment or a Partial Prepayment without paying any penalty. If I make a Partial Prepayment equal to one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other Partial Prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a Full or a Partial Prepayment at any time. However,

☐ I may prepay this Note in full at any time without penalty.

☒ If within the first TWENTY FOUR                months after the execution of this Note, I make prepayment(s), the total of which exceeds twenty (20) percent of the original principal amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) during the twelve (12) month period immediately preceding the date of the prepayment exceeds twenty (20) percent of the original principal amount of this Note. Interest will be calculated using the rate in effect at the time of prepayment.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000   % of my overdue payment of interest, during the period when my payment is interest only, and of Principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

● Interest Only ARM Note
2D968-CA (10/05)                    Page 2 of 3

LOAN ████████

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC., A NEW YORK CORPORATION
DOING BUSINESS AS AMERICA'S WHOLESALE LENDER

BY: _____
MICHELE S. JOLANDER
EXECUTIVE VICE PRESIDENT

_____  (Seal)
GEORGE BARREDA                                      -Borrower

_____  (Seal)
YVETTE BARREDA                                       -Borrower

_____  (Seal)
                                                                 -Borrower

_____  (Seal)
                                                                 -Borrower

*[Sign Original Only]*

● Interest Only ARM Note
2D968-CA (10/05)                          Page 3 of 3

This Document was electronically recorded by
Ticor Fullerton B

RECORDING REQUESTED BY
TICOR TITLE COMPANY
FULLERTON BRANCH

Recording Requested By:
P. WEBBER-JAMES

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

2006000724403 03:46pm 10/26/06

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
ESTELA CASILLAS



[ ne For Recording Data]

[ /Closing #]                                [Doc ID #]

DEED OF TRUST                           MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated OCTOBER 19, 2006      , together
with all Riders to this document.
(B) "Borrower" is
GEORGE BARREDA, AND YVETTE BARREDA, HUSBAND AND WIFE AS JOINT TENANTS

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

VMP -6A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291             Form 3005  1/01
CONV/VA





EXHIBIT B

DOC ID #: ▮▮▮▮▮▮▮▮

Borrower's address is
349 EAST RICHLAND AVENUE, ORANGE, CA 92865-1157
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
(D) "Trustee" is
RECON TRUST COMPANY, N.A.
225 WEST HILLCREST DRIVE MSN TO-02, THOUSAND OAKS, CA 91360
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated OCTOBER 19, 2006 . The Note states that Borrower owes Lender
FOUR HUNDRED THIRTY NINE THOUSAND FIVE HUNDRED and 00/100

Dollars (U.S. $ 439,500.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 01, 2036 .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)



DOC ID #: ▮▮▮▮▮▮▮▮

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                    of                    ORANGE                    :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

LOT 13 OF TRACT NO. 8903, IN THE CITY OF ORANGE, COUNTY OF ORANGE, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 364, PAGE(S) 3,4,5 AND 6,
MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES,
LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS
RESERVED IN INSTRUMENTS OF RECORD.

Parcel ID Number: ▮▮▮ ▮▮▮ ▮▮                               which currently has the address of
                349 EAST RICHLAND AVENUE, ORANGE                               ,
                          [Street/City]

California 92865-1157 ("Property Address"):
        [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,



$GD$ $40$

DOC ID # ████████

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.



DOC ID # ████████

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

DOC ID #: ▮▮▮▮▮▮▮▮

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of



DOC ID #: ███████████

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.



*DB 40*

DOC ID #:

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower



DOC ID #: ███████████

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security



DOC ID #: ██████████

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

DOC ID #: ████████

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.



DOC ID #: ▮▮▮▮▮

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

DOC ID # ███████████

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

 -6A(CA) (0207)          CHL (08/05)                     Page 13 of 16                                      Form 3005  1/01

𝒶𝓌 𝟦𝒟

DOC ID #: ██████████

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



GB 40

DOC ID #: ████████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
GEORGE BARREDA                    -Borrower

_____ (Seal)
YVETTE BARREDA                    -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

DOC ID #: ██████████

State of California
County of *Orange*                                                    } ss.

On _October 19th 2006_ before me, _Danny Lutfi_____
_____ personally appeared
_Yvette Barreda and George Barreda_____
_____
_____
_____
_____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

DANNY LUTFI
Commission # 1676941
Notary Public - California
Los Angeles County
My Comm. Expires Jun 25, 2010

_____ (Seal)
    *Notary Public*

GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE
DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS
FOLLOWS:

NAME OF THE NOTARY: _____ Denny Lu Hi _____

DATE COMMISSION EXPIRES: _____ Jan 25, 2010 _____

COUNTY WHERE BOND IS FILED: _____ Los Angeles _____

COMMISSION NUMBER: _____ 1676941 _____

MANUFACTURER / VENDOR NUMBER: _____ mro _____

PLACE OF EXECUTION: _____ fullton _____ DATE: _____ 10/2/06 _____

SIGNATURE: _____

I CERTIFY UNDER PENALTY OF PERJURY AND THE LAWS OF THE STATE OF
CALIFORNIA THAT THE ILLEGIBLE PORTION OF THIS DOCUMENT TO
WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:

PLACE OF EXECUTION: _____ DATE: _____

SIGNATURE: _____

# LANDSAFE TITLE

RECORDING REQUESTED BY:

RECONTRUST COMPANY

**AND WHEN RECORDED MAIL DOCUMENT**

**AND TAX STATEMENTS TO:**

RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

█████████████  **9.00**

**2011000411728 08:00am 08/22/11**

██████████████████████



---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST/~~MORTGAGE~~

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

**THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-24**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 10/19/2006, EXECUTED BY: GEORGE BARREDA, AND YVETTE BARREDA, HUSBAND AND WIFE AS JOINT TENANTS,TRUSTOR: TO RECON TRUST COMPANY, N.A., TRUSTEE AND RECORDED AS INSTRUMENT NO. 2006000724403 ON 10/26/2006, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF ORANGE COUNTY, IN THE STATE OF CALIFORNIA.

DESCRIBING THE LAND THEREIN: AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/~~MORTGAGE~~.

DATED: August 19, 2011

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

AUG 19 2011

State of: **CALIFORNIA**    )    BY: _____

County of: **VENTURA**    )    T. Sevillano, Assistant Secretary

On **AUG 19 2011** before me, **E.L. HOWARD**_____, notary public, personally appeared
_____**T.SEVILLANO**_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct. WITNESS my hand and official seal.



E. L. HOWARD
COMM. #1901815
Notary Public-California
VENTURA COUNTY
My Comm. Exp. AUG 28, 2014

Signature _E R Howard_____ (Seal)

E.L.HOWARD

# EXHIBIT C

*Form asgnmnt (01/09)*